## VANDERBILT *et al.* *v.* PLANTERS' OIL MILL & GIN CO.*

(Division A.  Nov. 23, 1925.)

[106 So. 14.  No. 25208.]

1. CARRIERS. *Railroad company may impose reasonable "demurrage"*
   *for detention of cars beyond reasonable time, and has lien there-*
   *for on goods transported in such cars.*

   A railroad company has the right to impose a reasonable charge,
   called "demurrage," for the detention of cars beyond a reason-
   able time for the loading or unloading thereof, and it has a lien
   therefor on the goods transported in such cars while it retains
   the dominion and control thereof.

2. CARRIERS. *Lien of carrier for demurrage cannot be sold or as-*
   *signed, and is lost if carrier surrenders property subject to lien.*

   The lien of a carrier for demurrage cannot be sold or assigned, and
   is lost if the carrier surrenders possession of the property on
   which the lien is claimed.

3. CARRIERS. *Privately owned cars held subject to demurrage, for*
   *unreasonable time which they remain on railroad track through*
   *fault of shipper or consignee.*

   Privately owned cars are subject to demurrage for any unreason-
   able time they remain on the railroad track through the fault of
   the shipper or consignee thereof.

4. CARRIERS. *As between shipper and consignee, one liable for de-*
   *murrage is one through whose fault demurrage was incurred.*

   As between the shipper and the consignee, the one liable for the
   payment of demurrage is the one through whose fault the de-
   murrage was incurred.

5. CARRIERS. *Payment of demurrage claimed by railroad company*
   *for unreasonable detention of cars held to discharge lien secur-*
   *ing payment thereof.*

   The payment of demurrage, claimed by a railroad company because
   of the unreasonable detention of cars, discharges any lien secur-
   ing the payment thereof which the railroad company may have
   had on cars or their contents.

---

*Headnotes 1.  Carriers, 10 C. J., Section 734, 744; 2. Carriers, 10 C.
J., Section 744 (Anno); Right of carrier to charge demurrage for
failure of consignee to unload cars within reasonable time, see
note in 3 L. R. A. (N. S.) 327; 4 R. C. L., p. 864, 873; 1 R. C. L. Supp.,
1230; 4 R. C. L. Supp., p. 296; 3. Carriers, 10 C. J., Section 734; 4.
Carriers, 10 C. J., Section 742 (Anno); 5. Carriers, 10 C. J., Section 744
(Anno).

Appeal from circuit court of Attala county.

Hon. T. L. Lamb, Judge.

Action by the Southern Cotton Oil Company against the Planters' Oil Mill & Gin Company, in which Arthur T. Vanderbilt and others, receivers, were substituted as plaintiffs. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

*J. D. Guyton,* for appellant.

The record clearly shows that the three S. C. O. X. cars involved in this litigation were the property of the Southern Cotton Oil Co., the appellant, and that they were leased or let to the Valley Refining Co. for a "trip," that is, for shipment to Mississippi where they would be loaded with oil and on to their ultimate destination under such load and then be returned to their base at Gretna, a suburb of New Orleans. Hence, we present this appeal from the standpoint of fact that the appellant was the owner of these tank cars, and merely leased or let them to the Valley Refining Co. for a "trip." The appellee sold the Valley Refining Co. three tanks of oil which was loaded in these three tank cars shipped to appellee by Valley Refining Co. under its said "trip" lease. The Valley Refining Co., after these tanks were loaded and delivered to the railroads for transportation by appellee, failed to furnish "shipping instructions" to appellee, whereupon this claimed demurrage accrued.

The Valley Refining Co., for some reason or other, did not pay these demurrage charges which accrued by its default, but on June 6, 1923, by letter notified appellee that these three tank cars belonged to appellant and should be returned to it at Gretna or New Orleans. Appellee, after as well as before this notice was received, refused to part with the possession of either of these tank cars, claiming the right to hold all of them until this demurrage was paid, and claiming that each tank car was liable for its own demurrage. At the same time, the appellee also

had in its possession under the same circumstances and as a part of the same order and shipment, one D. R. F. X. tank car which did belong to the Valley Refining Co., and which was worth a great deal more than the two hundred and seventy dollars demanded as demurrage on the three S. C. O. X. cars; but appellee claimed that each car must stand for its own demurrage.

Appellant, on July 11, 1923, in order to get possession of its three tank cars at least expense, put up with the appellee the two hundred and seventy dollars claimed as demurrage as a ransom for its three tank cars, waiving no rights thereby. The suit is brought to recover this two hundred and seventy dollars, which stands in the place of the three tank cars, with legal interest from July 11, 1923, together with actual and punitive damages for the wrongful detention thereof.

Whether the cars were on the private tracks of the appellee or on the tracks of the railroads, they were subject to instructions of appellee. There is nothing in the record anywhere to show that the railroad companies, or either of them, at any time ever demanded of either the Valley Refining Co. or the appellant any demurrage charges of any kind on these tank cars or either of them. This demurrage, whatever the amount may be, accrued while under load.

The legal questions involved in this case are: First, under the facts disclosed by the record in this case, did the carrier have any lien for the alleged demurrage charges on these tank cars which would give it the right to hold the cars until such alleged demurrage was paid? Second, if the carrier did have such lien and right to hold the cars to satisfy such lien, did such right and lien inure to the benefit of the appellee by subrogation, by assignment, or by any other means or manner?

It will be noted that the rule of the National Demurrage charges, if applicable here, only provides that these private cars are *subject* to demurrage after forty-eight hours

free time; but there is nothing shown in the record as to how much these charges are.

It was the duty of the appellee to know what this demurrage was in amount, and if he is unable to show the amount, then he is not entitled to hold this money any longer for that reason alone. Appellee did not even show in evidence any bill from the carrier to it for this demurrage, much less show any payment thereof by it, or any judgment rendered against it therefor. The two hundred and seventy dollars stands in place of the cars, and this suit, so far as the law is concerned, is a replevin suit of the cars. Could it be possible for the appellee to successfully defend a replevin suit of these cars upon showing merely that it claims a lien on the cars for some unknown amount? A petition to enforce a lien must show by what authority the lien is claimed and the amount thereof, 37 C. J., Liens, sec. 75, page 345. The judgment rendered must establish the lien and determine the amount, 37 C. J., Liens, sec, 77, page 346; see also 10 C. J., page 462. It is not made to appear that these cars were subject to demurrage; and the burden of proving they were is on the appellee as defense matter. *Y. & M. V. R. R.* v. *Searles,* 85 Miss. 520, 37 So. 939.

There is nothing in the evidence to show what, if anything, the carrier did have a lien on, for this alleged demurrage. The National Demurrage Rules shown in evidence, in the absence of any further showing that these cars had on them the name of the lessee, clearly exempts the cars from liability for demurrage so far as their owner is concerned. The appellee is just as much responsible for the default of the Valley Refining Co. as the appellant is. As this alleged demurrage accrued only after the cars were loaded with oil, and these cars were then under control of appellee, and were never under control of appellant, it would be more equitable for such demurrage to fall on the appellee rather than appellant. The appellant did not even have any knowledge of what was taking place, whereas the appellee did have knowledge as well as power.

The appellee used its power and control over these loaded cars in a way whereby it got its property, the oil, into the hands of an innocent purchaser, and then, in violation of appellant's lease of the cars to the Valley Refining Co., had the empty cars returned to appellee so it could hold appellant's property as a means of preventing a loss on its part, in case the Valley Refining Co. failed to pay. It is equivalent to the appellee's demanding that appellant guarantee the solvency and good faith of the Valley Refining Co., which appellant was under no obligation to do.

We submit that, under the evidence in this case, the carrier was not entitled to any lien on these tank cars, for the reasons: (1) That there is no rule or authority shown in evidence which entitles the carrier to a lien in this case; and (2) There is no proof of any legitimate demurrage charges made by the carrier; and (3) The amount of the alleged demurrage charges is indefinite and uncertain; and (4) The carrier in permitting the cars and their contents to be shipped out without asserting a lien waived same, if it ever had any; and (5) The carrier's lien, if any, was on the oil. If the carrier had no lien by which it could hold these cars for the alleged demurrage charges, it certainly and necessarily follows that appellee wrongfully detained the cars, and that, therefore, the appellant was entitled to recover as sued for.

Even if the carrier had a lien on the cars, this lien, under the evidence in this case, could not inure to the benefit of the appellee and empower the appellee to hold the cars against the demand of the appellant as owner.

In *N. O. & N. E. R. R. Co.* v. *George,* 82 Miss. 710, 35 So. 193, this court held that it was legitimate for a carrier to charge demurrage on freight under the rules of the Miss. R. R. Commission, and that under our statute (sec. 2293, Code 1906; sec. 4682, Hemingway's Code) creating a lien for freight and storage, the carrier has a lien for any such demurrage charges. In that case, the lien was on the freight, but the cars were railroad cars and not private cars. This lien cannot be assigned by the carrier.

It is a personal right. 10 C. J., Carriers, sec. 731, page 463; *Rosencranz* v. *Swofford Bros. Dry Goods Co.,* 175 Mo. 518, 75 S. W. 445, 97 Am. St. Rep. 609.

*J. G. Smythe,* for appellee..

The Planters Oil & Gin Company, a Mississippi corporation domiciled at Kosciusko, Mississippi, in the course of its business in the early part of April, 1923, sold to the Valley Refining Company of New Orleans, Louisiana, several tanks of cotton seed oil, to be shipped from Planters Oil Mill & Gin Co. at Kosciusko, Miss., and Crenshaw Oil Mill, at Crenshaw, Miss. Under the terms of the sale the Valley Refining Co. furnished tanks in which to ship said oil, and directed the Planters Oil Mill & Gin Co. to load said tanks with the oil and notify them for shipping instructions, and shipping instructions would be furnished. The oil was loaded into the tanks according to instructions, and the Valley Refining Co. called upon by appellee for shipping instructions. The Valley Refining Co. delayed for several days in giving shipping instructions. Finally, about May 8, 1923, the appellee, being unable to get shipping instructions from the Valley Refining Co., sold the oil for the account of whom it might concern, and shipped out the oil. During the time the cars were on the track loaded and awaiting shipping instructions from the Valley Refining Co., demurrage accrued against the several cars to the amount of two hundred and seventy dollars. This demurrage was charged against the appellee by the railroad company. The cars, after being emptied and returned to the appellee, it called on the Valley Refining Co. for payment of the demurrage and orders for the disposition of the cars, holding the cars for the payment of the demurrage. The Valley Refining Co. failed to pay the demurrage, and have the tank cars ordered out.

The Southern Cotton Oil Company claimed three of the tank cars which had been sent by the Valley Refining Co. to appellee; to wit, S. C. O. X. 652, 688, and 694; and

demanded of the appellee the return of said cars to it at Gretna, Louisiana. This was the first information that the appellee had of any claim of interest in the tank cars by appellant. Therefore, the appellant was not known in the transaction, and, up to that time, the appellee did not know that it claimed any right to or interest in the cars. The Valley Refining Co. claimed to hold them under lease, and appellee held the cars pending adjustment of the demurrage and order from Valley Refining Co. for disposition.

We cannot admit for the purposes of this suit that the appellant at the time of the institution of this suit owned the three tank cars in question. The title was in the appellant, but it had surrendered for a consideration its right to control these cars, in its contract with the Valley Refining Co., from the date of the contract, March 20, 1923, to the return of the cars or not later than November 1, 1923. For the purpose of this lawsuit the Valley Refining Co. had these cars under lease from the time of their shipment by it to the appellee in this case until their return to Gretna, Louisiana, by the appellee.

Bear in mind that no demurrage accrued against any of these cars after they moved out from the appellee's plant loaded; all the demurrage accrued while they stood loaded on the track waiting shipping instructions from the Valley Refining Co. The appellant had nothing whatever to do with this transaction, so far as this record shows, and knew nothing about it until long after it had happened. Our contention is that the appellee had the right to hold these cars until all charges against the Valley Refining Co. were paid, and the Valley Refining Co. did not question that right.

We contend that the appellee, had a right to ship out these cars loaded when the Valley consented for the oil in them to be sold for the account of whom it may concern, and that no one, especially not the appellant, who was unknown in the transaction, had a right to complain. Such use of the cars was not an unlawful use, even against the Valley who had the lawful right of control, subject to the

right of the appellee to get its oil out of them and to get relieved of the demurrage charges on. the cars which had been charged by the railroad company to the appellant, notwithstanding the reiterated charges in the declaration of appellant and in the argument to the contrary.

The contract of appellant with appellee, in regard to the payment of the demurrage and shipment of the cars, does not take from appellant its rights; neither does it broaden them nor give then rights which they did not have. It does not alter the *status* of the matter at all.

The fact that the appellant paid the demurrage to the appellee does not give them any present right to recover it from them.

It cannot be successfully contended that simply because the appellant at this late day claims title in the cars, that they can shed responsibility of their lessee and demand of an innocent party that he shall be made to suffer by reason of the default of their lessee. Great stress is laid upon the fact that appellant claimed to own the cars, and for that reason they should recover from the appellee. We must submit that if they owned the cars, they surrendered all rights in them, so far as this controversy is concerned, when they leased them to the Valley Refining Co. By their own statement they had no rights in nor control over these cars from April 10, 1923, to July 18, 1923.

We submit that *N. O. & N. E. R. R.* v. *George,* 82 Miss. 710, is decisive in the question of whether the railroad company has a lien for charges of this character. While that case was where a lien was declared on the contents of the car, we may with reason conclude that, where the ownership of the car is in the individual, it would be extended to cover the car. 4 R. C. L., pages 873-874, citing *Y. & M. V. R. R. Co.* v. *Searles,* 85 Miss. 520.

We submit, however, that this case does not turn on whether or not the railroad company had a lien on these cars, or whether the appellee had a lien on these cars for the demurrage which had been charged against the appellee. The appellant had no right in this case against the

appellee. It had no contract, no control over the cars in question. It was not known in the transaction.

The appellant cannot now raise the question of the demurrage not being rightfully charged against the appellant, as its declaration and its proof admit the charges and that same were charged against the appellant.

*J. D. Guyton,* in reply for appellant.

At most the appellee is a mere bailee of these cars, and the law on this is stated in 5 Cyc., page 214. Also, 38 Cyc., 2031 and 2032, Trover.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment for the defendant in an action at law rendered pursuant to a directed verdict. The suit was begun by the Southern Cotton Oil Company which afterwards went into the hands of receivers who were then substituted for the Southern Cotton Oil Company as plaintiffs in the case. The facts disclosed by the evidence necessary for an understanding of the questions decided on this appeal, are, in substance, as follows:

The Southern Cotton Oil Company is domiciled and is engaged in the cotton oil business in the state of Louisiana, and the Planters' Oil Mill & Gin Company is domiciled and is engaged in the cotton oil business in Mississippi, having a mill at Kosciusko and another at Crenshaw. The Southern Cotton Oil Company owns a number of tank cars for the shipment of oil, three of which were forwarded to the Planters' Oil Mill & Gin Company with the consent of the Southern Cotton Oil Company by the Valley Refining Company, a corporation, also domiciled and doing business in Louisiana for the purpose of being loaded with oil by the Planters' Oil Mill & Gin Company which the Valley Refining Company had purchased from it and shipped to such destination and consignee as

the Valley Refining Company should direct.   These cars were to be returned when loaded by the consignees thereof to the Southern Cotton Oil Company.   Two of these cars were delivered to the Planters' Oil Mill & Gin Company at Crenshaw and the other at Kosciusko.   All of them were loaded by this company and remained thereafter for some time on the railroad track at Crenshaw and at Kosciusko, awaiting the receipt by the railroad company of shipping directions which the Planters' Oil Mill & Gin Company could not give until furnished therewith by the Valley Refining Company.   This company finally declined to direct the destination and consignee to which the oil should be shipped, and the Planters' Oil Mill & Gin Company then shipped the cars out themselves, and sold the oil for the account of the Valley Refining Company.   When the cars were unloaded by the consignees, the railroad company returned them to the Planters' Oil Mill & Gin Company at its request, delivering two cars to it at Crenshaw and the other at Kosciusko.

Afterwards the Southern Cotton Oil Company requested the Planters' Oil Mill & Gin Company to forward the cars to it, which request was denied.   The ground on which this request was denied is that demurrage to the extent of two hundred seventy dollars had been incurred and was due the railroad company because of the time these cars remained on the railroad tracks awaiting the receipt by the railroad company of shipping orders therefor.   The railroad company did not assert any lien on the cars for this demurrage, but rendered a bill therefor to the Planters' Oil Mill & Gin Company, the exact amount of which is not clear.   The greater part, if not all, of the demurrage claimed by the railroad company on the two cars at Crenshaw was paid by the Planters' Oil Mill & Gin Company, but that claimed by the railroad company to be due on the car at Kosciusko has not been paid, though the amount thereof and the right of the railroad company thereto is not disputed by the

Planters' Oil Mill & Gin Company.  When called on for
the cars by the Southern Cotton Oil Company, the Plant-
ers' Oil Mill & Gin Company declined to give them up
until it should be paid the amount of demurrage which
it owed or had paid the railroad company thereon.  The
Southern Cotton Oil Company denied any liability for
this demurrage or any right in the Planters' Oil Mill &
Gin Company to hold the cars therefor.  After consider-
able negotiation relative thereto, the Southern Cotton Oil
Company paid the Planters' Oil Mill & Gin Company two
hundred seventy dollars, the amount of the demurrage
which it claimed had accrued on the cars, under an
agreement that by so doing the Southern Cotton Oil Com-
pany waived no rights it had in the matter, the money
simply to take the place of the cars, and the Southern
Cotton Oil Company to have the same right to recover
the money as it theretofore had to recover possession of
the cars.

No rule of the Interstate Commerce Commission, or of
the State Railroad Commission, or of any association
dealing with the subject of demurrage, was introduced
in evidence, except paragraph 4 of rule 1, of the National
Car Demurrage Rules, which rules, according to the evi-
dence of the defendant, were in force when the demur-
rage hereinbefore referred to was incurred, if it was in
fact incurred.  What organization inaugurated these
rules and why they apply here does not appear.  The rel-
evant portion of paragraph 4, rule 1, is as follows:

"Private cars while held under constructive placement
for delivery upon the tracks of their owners are subject to
demurrage charges after expiration of forty-eight hours'
free time."

This rule, it will be observed, does not fix the amount
to be charged as demurrage nor how the collection there-
of shall be enforced.

This suit was instituted by the Southern Cotton Oil
Company to recover the two hundred seventy dollars
paid by it to the Planters' Oil Mill & Gin Company, rent

for the cars for the time they were held by that company after they were unloaded, and for what is styled in the declaration as punitive damages. At the close of the evidence, the court directed the jury to return a verdict for the defendant, and the receivers for the Southern Cotton Oil Company have brought the case to this court.

The ground on which the appellee seeks to maintain the judgment of the court below is that the railroad company had the right to charge demurrage on these cars and had a lien thereon therefor, which lien passed to the Planters' Oil Mill & Gin Company, when it received the cars back from the railroad company because of its liability to pay the railroad company demurrage due on the cars.

A railroad company has the right to impose a reasonable charge, called demurrage, for the detention of cars beyond a reasonable time for the loading or unloading thereof, and it has a lien therefor on the goods transported in such cars while it retains the dominion and control thereof. Section 2293, Code of 1906 (Hemingway's Code, section 4682); *Railroad Co.* v. *George,* 82 Miss. 710, 35 So. 193, 4 R. C. L. 871. This lien is personal to the carrier, and cannot be sold or assigned, and is lost if the carrier surrenders possession of the property on which the lien is claimed, 4 R. C. L. 870 et seq.; *Shingleur Johnson & Co.* v. *Canton Cotton Warehouse Co.,* 78 Miss. 875, 29 So. 770, 84 Am. St. Rep. 655. This case deals with the lien of a warehouseman, but a lien for demurrage is similar in character, and in this connection is governed by the same rules. *Railroad Co.* v. *George, supra.*

Privately owned cars are subject to demurrage for any unreasonable time they remain on the railroad track through the fault of the shipper or consignee thereof (10 C. J. 465), and we will assume for the purpose of this argument that a lien therefor covers such cars. As between the shipper and the consignee, the one liable for the payment of demurrage is the one in fault, and, since

the delay in the forwarding of the cars here in question was caused by the failure of the Planters' Oil Mill & Gin Company to furnish the railroad company with shipping directions, liability for the demurrage resulting therefrom rests primarily on it, and the railroad company had the right to look to it for the payment thereof. Whether the railroad company had the right to hold the Valley Refining Company also liable therefor as an undisclosed principal of the Planters' Oil Mill & Gin Company is not here material.

From the foregoing views it necessarily follows: (1) When the railroad company delivered possession of the cars to the Planters' Oil Mill & Gin Company, any lien it may have had thereon for demurrage was lost, and did not pass to the latter company; and, (2) when the Planters' Oil Mill & Gin Company paid or pays this demurrage, it paid or will pay its own debt, or that of its principal, the Valley Refining Company, consequently any lien which its creditor had for the payment thereof was necessarily destroyed when the debt was paid.

This demurrage was incurred through no fault of the Southern Cotton Oil Company but solely through the fault of the Planters' Oil Mill & Gin Company or its principal, the Valley Refining Company. Consequently it necessarily follows that neither of them can succeed to the lien of the railroad company thereby created by paying the demurrage.

*Reversed and remanded.*