MADDEN BROTHERS, INC., Appellant, vs. JACOBS, Respondent.

*March 12—April 7, 1931.*

For the appellant there was a brief signed by *Powell & Sprowls* of Superior, and oral argument by *John S. Sprowls* and *A. W. Bowen* of Minneapolis.

For the respondent there was a brief by *Hanitch, Hartley, Johnson & Fritschler* of Superior, and oral argument by *Clarence J. Hartley.*

ROSENBERRY, C. J. It is the contention of the plaintiff here that under the evidence it was a jury question as to whether or not the plaintiff made unconditional delivery. On the part of the defendant it is contended: (1st) that unconditional delivery was made and the title passed to Torrance; (2d) that the defendant is protected as a purchaser; and (3d) that the plaintiff has waived any right to the possession of the goods.

A determination of the questions presented here requires us to distinguish sharply between the so-called objective and subjective character of transactions. A consideration of the whole evidence leads one very easily to the conclusion that the plaintiff supposed that its right of possession to the goods was retained under the arrangement had by Torrance with the Ford Motor Company until payment was actually made. It is quite evident that it was led to this conclusion from the fact that the manager testified upon the trial that the Ford Motor Company made no deliveries upon credit. In the previous year the company had hauled around four thousand cars and during this year up to this time a little better than two thousand cars and no deliveries had been made on credit. It is quite apparent that, relying upon this conception of the legal relation of the parties, the truck driver was directed to deliver the cars in question without any reservations as to payment. This is indicated by the fact that the manager wrote the letter set out in the statement of facts and that he took no steps to protect the company for two weeks. In this situation the plaintiff must have considered (1) that it was protected by the reservation of title, or (2) that it was warranted in itself extending credit to the notify party. It knew that if the goods were delivered without collecting the amount of the invoice, it became liable to the shipper. Under the arrangement between Torrance and the Ford Motor Company, responsibility for the care of the goods on the part of the company ceased when delivered to the private carrier; hence the agreement which Torrance was required to sign to the effect that the offer of transportation had been accepted as of the day of its date. Of all these matters which were or might have been in the mind of the plaintiff, what was manifested to Torrance? Torrance knew or is chargeable with knowledge that as against the Ford Motor Company, under his contract, he could secure no goods until they were paid for. He

knew also that he had made no arrangement with the plaintiff by which credit was to be extended to him by the plaintiff; that the goods were unconditionally delivered to him, and that might come about either because the Ford Motor Company had waived the clause in its contract requiring prepayment or the plaintiff had assumed responsibility and extended credit on its own motion. It is quite evident that the plaintiff was in error in regard to the law governing the transaction and that in reliance upon the erroneous view of the law it in fact delivered the goods to Torrance without manifesting to him that they were delivered otherwise than unconditionally. Nothing being manifested, the presumption is that the delivery was unconditional. 2 Williston, Sales, p. 817 *et seq.* Torrance did nothing by way of concealment, misrepresentation, fraud, or even solicitation to bring about this result. He merely accepted the situation created by the plaintiff. He retained possession of the goods for two weeks, during which time the plaintiff did nothing to assert any right to the goods or to inform Torrance that it had any title or claimed a lien or right of possession. In the letter of June 30th the plaintiff says:

"We would appreciate your co-operation in mailing a bank draft made out in favor of the Ford Motor Company and freight check in our favor to us Tuesday July 1 without fail."

There is not the slightest intimation in this letter that the goods had not been unconditionally delivered. The letter indicates also that the plaintiff had not settled with the Ford Motor Company, else the draft should have been made payable to plaintiff. Plaintiff says: "This morning we delivered to you a truckload of Ford cars." This indicates an unconditional delivery; no intimation that if payment is not made possession will be reclaimed. While the fact that Torrance sold the cars to the defendant at cost without profit might justify the suspicion that he was taking advantage of the

situation for his own benefit, nevertheless the matter remained, so far as the record is concerned, *in statu quo* for two weeks, during which time the plaintiff did nothing.

The legal relation of the plaintiff to the transaction in question has three aspects: (1st) It was a private carrier entitled to retain possession of the goods until the carriage charges were paid. (2d) It was a bailee of the goods under contract to deliver the same to the notify party at Superior. (3d) It was the agent of the Ford Motor Company for the collection of the amount due. As a carrier it waived its lien by transferring possession of the goods to Torrance without requiring prepayment of the freight charges. *Wisconsin Brick Co. v. National Surety Co.* 164 Wis. 585, 160 N. W. 1044; 4 Ruling Case Law, p. 871, § 325, and cases cited. Once waived the right is not restored even though the goods again come into the possession of the carrier. *Hale v. Barrett,* 26 Ill. 195; *Vanderbilt v. Planters' O. M. & G. Co.* 140 Miss. 427, 106 South. 14. In this respect there appears to be no difference in the law with respect to common and private carriers.

Under the peculiar arrangement provided for by the contract between Torrance and the Ford Motor Company, Torrance was required to assume risks of transportation, and therefore the contract of carriage was made by the Ford Motor Company on behalf of the Torrance Motor Company and ratified by Torrance when he signed the receipt set out in the statement of facts. This was in the form of a proposal by the plaintiff to Torrance. Certainly when this contract was signed by Torrance and possession of the goods delivered to him, all the rights of the plaintiff to the possession of the property as bailee ceased according to the express language of the agreement.

As agent of the Ford Motor Company, as appears from the documents, it was the duty of the plaintiff to retain possession of the goods until payment of the purchase price was

made. This the plaintiff failed to do. Having voluntarily parted with the possession of the goods, Torrance having employed no fraud or device to induce the plaintiff to part with the possession, can the plaintiff, as agent to collect, maintain an action in its own name to recover the possession of the goods and so remedy its default? It is to be noted that this is a purely possessory action. The plaintiff neither in its pleading nor upon the trial attempted to assert any right as assignee of the Ford Motor Company. The relation of the Ford Motor Company to the transaction is one thing and that of the plaintiff is another. If the Ford Motor Company were in court asserting its right under its contract upon a claim that its agent had made delivery contrary to its instructions, a very different situation would be presented. The undisputed evidence in this case shows that the plaintiff had no title to the property in question. The title was at all times either in the Ford Motor Company or in Torrance. As disclosed by the evidence, the sole right of the plaintiff to possession of the property arose under the contract to transport and under the arrangement by which the plaintiff might retain possession until paid. Neither of these possessory rights was dependent upon the title being in the plaintiff. We are cited to no case and we find none where it has been held that an agent under the circumstances of this case can maintain an action in his own name for the benefit of his principal. Sec. 260.13, Stats., requires that every action must be prosecuted in the name of the real party in interest, except as provided in sec. 260.15, which relates to suits by an executor, administrator, or trustee of an express trust.

In *Piotrowski v. Czerwinski,* 138 Wis. 396, 120 N. W. 268, it was held that an agent, in that case an attorney, could not maintain an action upon notes for the benefit of his principal. A promissory note being merely one form of contract,

it must follow from that case that an agent cannot maintain an action in his own name upon a contract made by the principal with a third party. See 2 Mechem, Agency (2d ed.) § 2020 and cases cited. It is considered that the plaintiff was not entitled to maintain this action. We cannot in this action determine what the rights of the Ford Motor Company are, because it is not a party and that issue has not been tried.

*By the Court.*—Judgment affirmed.

OWEN, J. (*dissenting*). It seems to be conceded that it was not the intention of the plaintiff to make unconditional delivery of the cars in the absence of the payment of the purchase price. But it is held as a matter of law that Torrance believed that an unconditional delivery of the cars was being made. I am of the opinion that whether he so believed, or whether he had any reason for so believing, presented a jury question.

The plaintiff owed to the Ford Motor Company the duty of making collection of the invoice. If it made unconditional delivery of the cars without collecting the amount of the invoice, it must have been with the intent and design of extending to Torrance credit to the amount of the invoice. This upon its face seems so unlikely as to require close scrutiny of the record to determine what Torrance believed, or what he was justified in believing, from all the facts and circumstances surrounding the situation. Taylor, the employee or agent of the plaintiff, who brought the cars to Superior, arrived there at six o'clock Monday morning, before Torrance arrived at his place of business. Taylor called him up at his home and he came down to his garage. Taylor told Torrance that the amount of the Ford draft would be wired Monday morning, and that he would leave the cars if he, Torrance, would look after that. Torrance

said he would. It was thus made plain to Torrance that the payment of the invoice had something to do with the delivery of the cars.

It is a rule supported by the weight of authority that a promise to do that which the promisor has no present intention of performing, is fraud. 12 Ruling Case Law, p. 261. While this doctrine has neither been adopted nor repudiated in this state, it found rather favorable expression in *Jeleniewski v. Eck,* 175 Wis. 497, at p. 499, 185 N. W. 540.

If when Torrance promised to take care of the invoice he had then no intention of so doing, there is much reason to say that he obtained possession of the cars by his own fraud. That his subsequent conduct evidenced such a disposition at the time he receipted for the cars, is conceded in the opinion. It is my own belief that if he did not intend to pay the amount of the invoice when he so promised, he was guilty of fraud, and all the circumstances of the case justify a jury in inferring such a fraudulent intent. But as the case was not tried on that theory, and as the point is not relied on for a recovery, I pay no further attention to it.

The real question is whether the record justifies a holding as a matter of law that Torrance believed or had reason to believe that an unconditional delivery of the cars was intended. As bearing upon this question, we first must note the fact that under his contract with the Ford Motor Company it was provided that title to the cars should remain in the latter until paid for. He knew that Madden Bros. was required to make collection of the purchase price for the Ford Company. He knew that Madden Bros. had no prior business relations with him and knew nothing as to whether he was deserving of credit. He knew that Taylor was a mere agent of Madden Bros., and he was at least put upon his inquiry to ascertain whether Taylor was authorized to extend him credit in behalf of Madden Bros. As a matter

of fact, Taylor had no such authority, and there was nothing about the circumstances to indicate apparent authority. Taylor refused to deliver the cars at all until Torrance promised to take care of the invoice. When Taylor arrived at Superior that morning with the cars, he was confronted with an unusual situation. It was his duty to collect the invoice, but, owing to circumstances, he was not in possession thereof, and did not know the amount that was due. However, he was obliged to make some disposition of the cars. He might have left them on a vacant lot, or he might have left them in the garage across the street until the arrival and payment of the invoice. But could he not as well have left them in Torrance's garage as in the garage across the street, with the understanding that they were not to become the property of Torrance until he should pay the invoice? The leaving of the physical custody of the cars with Torrance under such circumstances would not amount to a delivery of the title of the cars to Torrance nor the right to their possession as against the plaintiff. While Torrance signed a receipt, no particular sanctity attaches to this receipt. All receipts are subject to explanation by parol evidence. When all of the facts are taken into consideration, the inference is permissible if not compellable that the receipt signed by Torrance was merely one for the custody or physical possession of the cars. Because upon the evidence the jury had a right to so find, it seems clear to me that this issue should have been submitted to the jury.

The letter written by the plaintiff to Torrance on June 30th in which it referred to the fact that "this morning we delivered to you a truckload of Ford cars" is subject to the same construction. The word "delivered" is a proper word to indicate either delivery of physical possession or transfer of legal title. Under all the circumstances it seems plain that the plaintiff in this letter used the word "delivered" to simply indicate a delivery of the physical possession of the cars.

388

If this was the character of the delivery, then Torrance acquired no right or interest in the cars superior to the right of the plaintiff. Whatever right he had was subject to the right of the plaintiff to retake the cars at its pleasure until the payment of the invoice. "A prior possession is sufficient to enable the plaintiff to maintain replevin against one not having a superior interest or right." *Wisconsin Livestock Asso. v. Bowerman*, 198 Wis. 447, at p. 453, 224 N. W. 729. Of course a common carrier may waive his lien by unqualifiedly transferring the possession of the goods to the consignee. But merely vesting the consignee with physical possession as a custodian until the assignee does that which it is agreed by all is necessary for him to do in order to acquire title, does not destroy the right of the carrier to recover the possession of the goods under the circumstances here presented.

For these reasons I dissent.