IN RE the PATERNITY OF JOSHUA A. E.: STATE of Wisconsin, Petitioner-Appellant,

v.

JODY A. E., Respondent-Respondent,

The Honorable J. MAC DAVIS, Waukesha County Circuit Court, Intervenor-Respondent. [Case No. 91-2367.]

IN RE the PATERNITY OF LUCAS D. B.: STATE of Wisconsin, Petitioner-Appellant,

v.

TIMOTHY J. B., Respondent-Respondent,

The Honorable J. MAC DAVIS, Waukesha County Circuit Court, Intervenor-Respondent. [Case No. 91-2379.]

Court of Appeals

*Nos. 91-2367, 91-2379. Oral argument September 2, 1992.—Decided September 30, 1992.*

(Also reported in 491 N.W.2d 136.)

328

329

331

On behalf of the petitioner-appellant, there were briefs submitted by *Steven R. Schmitz,* assistant corporation counsel. There was oral argument by *Steven R. Schmitz.*

On behalf of the intervenor-respondent, there was a brief submitted by *James E. Doyle,* attorney general, and *James H. McDermott,* assistant attorney general. There was oral argument by *James H. McDermott.*

On behalf of the amicus curiae, there was a brief submitted by *James M. Brennan* and *Kathleen A. Thiemann* of the *Legal Aid Society of Milwaukee, Inc.* There was oral argument by *Kathleen A. Thiemann.*

There was a brief submitted by *Sherwood K. Zink* of the *Wisconsin Department of Health and Social Services.* There was oral argument by *Sherwood K. Zink.*

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J. The issue is whether the mother of a child is a necessary party to a paternity action such that she must be served with a summons and petition unless unfeasible.[1] In each of these cases, the trial court answered the issue in the affirmative. It dismissed each case after determining that the state refused to join the mother to a paternity suit and gave no feasible reason. We uphold the trial court.

The facts are simple. In each case, the state commenced a paternity action by filing a petition alleging the identity of the father under sec. 767.45(1)(g), Stats. This statute authorizes the state to bring a paternity action whenever it is a real party in interest as specified

---

[1]For a general discussion of this issue, *see Welker & Makepeace, Paternity Actions: Who is a Necessary Party?,* Wis. J. Fam. L., Jan. 1991, at 18.

in sec. 767.075(1), Stats. One petition named the state as the petitioner and Jody A.E. as the respondent, the other petition named Timothy J.B.

With each petition, the state also filed a Motion to Proceed Without Mother as Named Party, with a supporting affidavit. The motions were filed because of a letter from the trial court to the clerk of courts directing ". . . you and your staff to refuse to accept for filing new paternity petitions which do not name the mother as a party unless such a petition is accompanied by a motion to permit the action to proceed without naming the mother as a party." The accompanying affidavits expressed the state's belief that mothers are not necessary parties.

A hearing was held on the motions. The trial court subsequently took under advisement the question of whether mothers are necessary parties and then issued written decisions denying the motions; it ordered that each child's mother be joined as a party. When the state still refused, the trial court issued orders to show cause why sanctions should not be imposed since the state had neither appealed nor complied with the trial court's decisions and orders. The state appeared and explained its position to no avail as the trial court dismissed each case. The state appealed both cases and we consolidated them on our own motion.

Because of the unique posture of this case, it is helpful to identify the participants in this appeal. The state is represented by the Waukesha County Corporation Counsel. It filed an appellant's brief. The trial court judge, the Honorable J. Mac Davis, moved this court to intervene. The motion was granted, and the attorney general of the state of Wisconsin filed a respondent's brief on Judge Davis' behalf. The Wisconsin Department of Health and Social Services was allowed to file an

*amicus curiae* brief, aligning itself with the state. The Legal Aid Society of Milwaukee, Inc. was also allowed to file an *amicus curiae* brief aligning itself with Judge Davis. All participated in oral argument.

We begin by recapping the trial court's rationale in deciding that mothers are necessary parties in paternity actions. The trial court began by citing Wisconsin's joinder statute, sec. 803.03(1), Stats. That statute describes those persons who "shall" be joined as a party in an action. Included in the description are persons who shall be joined if "[i]n the person's absence complete relief cannot be accorded among those already parties." Section 803.03(1)(a).

The trial court next decided that mothers in paternity actions fit the above statutory description. We deem it appropriate to quote a significant portion of the trial court's reasoning:

> Paternity actions . . . involve a variety of decisions of great interest to the child's mother. A child support order directly involves her. Even where a mother is receiving public assistance the support order is important to her. She will have to live with the order after she leaves assistance, absent a substantial change in circumstances . . .. And the amount of the State's claim for AFDC public assistance which can be later recovered from the mother under section 49.195 Wis. Stats. is directly impacted by the child support ordered and paid. A mother who has paid lying in expenses cares about the paternity judgement's ruling on the father's contribution, as well as the order on back support, and orders to maintain health insurance and pay uninsured medical expenses.
>
> Beyond mere financial obligation is the determination of custody and physical placement . . ..

334

It seems indisputable to me that a mother in a paternity action, in every case or in almost every case, is exactly the kind of necessary party that Sec. 803.03(1) contemplates.

The trial court thus found the mother to be a necessary party because child support, health insurance, payment of medical bills, custody and physical placement are determined in paternity actions. The trial court then concluded that the mother is not bound unless made a party; without her, complete relief cannot be accorded among those already parties.

The state first assigns error to the trial court's decision that sec. 803.03(1), Stats., is applicable to paternity actions. The state observes that the necessary party statute at issue here is part of Wisconsin's general rules of civil procedure, chs. 801 to 847, Stats. The state argues that the rules appearing in these chapters apply only to civil cases which are not special proceedings, unless the special proceeding specifically or impliedly adopts a section within chs. 801 to 847. The state then posits that paternity proceedings under ch. 767, Stats., are outside the purview of chs. 801 to 847, because paternity proceedings are governed by their own set of procedural rules. The state then concludes that because there is no provision in ch. 767 invoking sec. 803.03(1) or a similar type of statute as part of a paternity procedure, the necessary party statute is inapplicable.

■■

The state's analysis is incorrect. Section 801.01(2), Stats., plainly says:

SCOPE. Chapters 801 to 847 govern procedure and practice in circuit courts of this state in all civil actions and special proceedings whether cognizable as cases at law, in equity or of statutory origin except

where different procedure is prescribed by statute or rule.

From this statute, it is apparent that chs. 801 to 847, Stats., govern special proceedings as well as civil actions, unless the special procedure statute says to the contrary. Since ch. 767, Stats., is silent regarding who is or who is not a necessary party, that special proceeding chapter lists nothing contrary to sec. 803.03(1), Stats.

■ In fact, to the extent that ch. 767, Stats., says anything at all with regard to necessary parties, it favors Judge Davis' analysis. For example, sec. 767.51(3), Stats., states that "[t]he court shall order either party or both to pay for the support of any child of the parties." Section 767.51(5)(b) requires consideration of "the needs of each party in order to support himself or herself" at a certain level. We agree with Judge Davis that such language refers to mothers and fathers, not other potential parties such as the state.

The state asserts that our analysis would be inconsistent with this court's decision in *In re A.M.L.*, 161 Wis. 2d 133, 467 N.W.2d 570 (Ct. App. 1991). The state reads that case to say that paternity proceedings are governed by their own set of rules and that to the extent the rules are silent about a certain procedure, we can look for answers only within the chapter dealing with actions affecting the family, according to sec. 767.475(8), Stats.

■ The state's reading of *A.M.L.* is wrong. The *A.M.L.* court wrote that the paternity statutes are "almost" a comprehensive code for the conduct of paternity proceedings. *Id.* at 138, 467 N.W.2d at 572. In considering the meaning of sec. 767.475(8), Stats., it stated that "the legislature intends us to look first for answers to proce-

dural questions in Chapter 767 ('Actions Affecting the Family') *and then to procedures applicable to other actions."* *Id.* (emphasis added). Our holding comports with *A.M.L.*

The state also claims that our agreement with Judge Davis' analysis would lead to absurd results. As illustration, the state hypothesizes a father arguing that because there is no counterclaim statute in ch. 767, Stats., the counterclaim provision of sec. 802.07, Stats., must apply to paternity and divorce actions. Therefore, the father could bring a counterclaim against the child's mother for assault, libel, defamation, or wrongful taking of property. The state asserts that common sense dictates this result to be unreasonable and therefore use of sec. 803.03, Stats., should not apply to paternity actions.

The use of the hypothetical lacks merit. Sections 767.50 and 767.51(3), Stats., state the specific issues to be heard at a paternity proceeding. Section 767.455(5g), Stats., states the specific defenses available to the father and the procedural means to raise these defenses. By these statutes, the legislature was enacting a procedure different than the general provisions of chs. 801 to 847, Stats., which allow for an answer and a counterclaim. All of the state's arguments that sec. 803.03, Stats., is inapplicable to paternity fail.

The state next argues that if sec. 803.03, Stats., applies to a paternity action, sec. 803.01(2), Stats., says that any party authorized by statute to sue for the benefit of another may do so without naming the party being benefited. The state claims that this section applies to it. Section 803.01(2) reads as follows:

> REPRESENTATIVES. A personal representative, executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose

name a contract has been made for the benefit of another, or a party authorized by statute may sue in the party's own name without joining the person for whose benefit the action is brought.

The state explains that there are two kinds of state-commenced paternity cases. One is the "welfare" case, a case in which some form of public assistance has been provided and the state's authority to sue is granted by sec. 767.075(1)(c), Stats. The other is the "non-welfare" case, a case without public assistance in which the mother requests legal services to establish paternity. The state's authority to sue in this instance is conferred by sec. 767.075(1)(a).

The state contends that, in both instances, the state acts on behalf of the mother. In the welfare case, the mother will benefit as well as the state. Because of the state's action, the mother will be entitled to seek contribution from the father, receive benefits from health care insurance and health care expense orders, and receive support payments if aid is discontinued or if it exceeds the grant amount.

In the non-welfare case, the mother of the child is clearly the immediate beneficiary. Because of the state's legal services, she will be entitled to child support, to recover pregnancy and confinement expenses, and to have the adjudicated father share the responsibility for health care expenses. While the state also benefits in that it is unlikely that the state will have to pay for these expenses, the action is brought to benefit the mother.

All of what the state says is true with respect to the mother benefiting by the state's assertion of a paternity action. The state, however, misses the point of sec. 803.01(2), Stats. The statute permits certain entities to prosecute an action in the name of the real party in

interest. The entity must have no interest of its own, but acts for the sole benefit of another. This is apparent from the legislative history of the statute. The old statutes required that every action be prosecuted in the name of the real party in interest. The real party in interest was the one who had a right to control and receive the fruits of litigation. *Mortgage Assocs. v. Monona Shores, Inc.,* 47 Wis. 2d 171, 179, 177 N.W.2d 340, 346 (1970). An exception was provided for suits by an executor, administrator, or trustee of an express trust. Section 260.15, Stats. (1973). The reason for the exception was that these entities prosecuted actions *for* the real party. *See Madden Bros. v. Jacobs,* 204 Wis. 376, 384, 235 N.W. 780, 784 (1931). Any benefits accrued solely to the real party. The new statute, sec. 803.01(2) has the same purpose, but the list of entities is merely expanded. *See* Judicial Council Committee's Note, 1974, Wis. Stat. Ann. sec. 803.01(2) (West Supp. 1977). Thus, unless an entity is *not* a real party in interest, but sues on behalf of *the* real party, the statute is inapplicable. Here, the state, by statute, is a real party in interest. It therefore does not qualify.

The state next argues that if we do not accept either of the first two arguments, then we should hold that the mother is already a party to the paternity action even if not named or joined. The state reasons that the paternity statutes are designed to permit the mother's participation in a manner similar to a party to a case. The state cites the same examples that were used by Judge Davis to counter the state's earlier argument that the paternity statutes do not allow for joinder. The state cites sec. 767.48(5)(a), Stats., allowing the court to order "either or both parties" to reimburse the county for blood test costs if they have sufficient resources. It cites sec. 767.51(3), Stats., permitting the paternity judgment to

contain "any other provision directed against the appropriate party to the proceeding" concerning support, legal custody, periods of placement and other matters. The statute also requires the court to order "either party or both to pay for the support of any child of the parties." *Id.*

The state also points out that the mother of the child can request blood tests under sec. 767.458(1)(d), Stats., contend that under sec. 767.458(1m) finding a man other than her husband to be the father is not in the child's best interests, and request modification of child support payments determined by percentage standard methods under sec. 767.51(5), Stats.

The underlying reason for the state's position that the mother already *is* a party even without being named is to take dead aim at Judge Davis' analysis, which is basically this: courts can make a legally binding adjudication only between the parties actually joined in the action. If not actually joined, then complete and final justice cannot be done. That is why necessary parties must be named.

The state posits that the real underpinning behind the question of whether parties are so necessary that they be named is not whether they have an interest in the controversy, but whether the controversy will be at an end such that all parties are precluded from retrying the matters.

The state argues that the mother's opportunity to be present and to participate alleviates the concern over "multiplicity of actions." She has a fair opportunity, procedurally, substantively and evidentially, to pursue all claims raised in a paternity proceeding. Therefore, upon judgment, she would be barred from pursuing the same claim against the same respondent in a second lawsuit on collateral estoppel grounds.

██

The general rule is that no persons are bound by a judgment except those who are parties or stand in privity with others who are parties. *McCoy v. Quick,* 30 Wis. 521, 527 (1872). *See also* 46 Am. Jur. 2d *Judgments* sec. 518 (1969). Judge Davis wrote that "if a mother is a party to a paternity action, the correct practice is for her to be clearly identified as such and to be accorded all rights of a party." We agree and reject the argument that a person can be considered a party and be bound by a judgment without being named a party.

The state then claims that even if the mother is not a party, she stands in privity with the state and can thereby be bound by a judgment. The state cites law that a successive party may be in privity with a named party who represents the same legal interests. *Kunzelman v. Thompson,* 799 F.2d 1172, 1178 (7th Cir. 1986). Strict identity of the parties is not necessary to achieve privity. *Id.* The state then contends that when paternity actions are brought by the state, the mother's legal interest in having paternity adjudicated is represented by the state. Both the state and the mother are interested in obtaining the father's assistance in supporting the child. Support not received from the father becomes the mother's responsibility. If the state is a real party in interest in welfare and non-welfare cases, the mother is its privy. As its privy, she would be barred from pursuing the same claim against the same respondent in a second lawsuit. The state concludes that since it virtually represents the mother, and since the interests of the represented and the representative are so identical, there is no adversity of interest and the mother is precluded from further litigation.

We disagree that the state stands in privity with the mother. First, we observe that attorneys responsible for acting on behalf of the state may only represent the state; they cannot represent the mothers. Section 767.075(2)(a), Stats. Second, the issues of custody and visitation impinge on the mother's rights as sole legal custodian of her child born out of wedlock and are not interests shared by the state. Without joinder of the mother, whether visitation occurs on a regular basis depends more upon her cooperation in the process than in the existence of an enforceable court order.

Third, as we pointed out at the beginning of this opinion, Judge Davis reasoned that the amount of the state's claim for AFDC public assistance can later be recovered from the mother under sec. 49.195, Stats. This amount is directly impacted by the child support ordered and paid. Judge Davis' comment is well taken. The interests of the mother may well be adverse to the interests of the state regarding this issue.

Fourth, as the *amicus curiae,* Legal Aid Society of Milwaukee points out, our supreme court addressed concerns from which we conclude that the interests of the state and the mother's interest may be adverse. In *Gerhardt v. Estate of Moore,* 150 Wis. 2d 563, 441 N.W.2d 734 (1989), the court quoted the United States Supreme Court as follows:

> "The unwillingness of the mother to file a paternity action on behalf of her child, which could stem from her relationship with the natural father or . . . from the emotional strain of having an illegitimate child, or even from the desire to avoid community and fam-

ily disapproval, may continue years after the child is born."

*Id.* at 569–70, 441 N.W.2d at 737 (quoting *Clark v. Jeter,* 486 U.S. 456, 463 (1988)). From this passage, it is apparent that the state and the mother may not always have identical interests in even the most basic issue of all—paternity. Certainly, it is the legislative intent that children should know the identity of their parents. Section 1, 1987 Wis. Act 413. However, we agree with the Legal Aid Society of Milwaukee that this right does not necessarily overcome the best interest of the child. It may be very traumatic to a child's sense of identity to find that the person he or she believed to be the father was not. In fact, the crucial nature of that certainty to the child's best interest was the rationale for not ordering blood tests in *In re C.A.S.,* 161 Wis. 2d 1015, 468 N.W.2d 719 (1991).

*Amicus curiae* Wisconsin Department of Health and Social Services (DHSS) urges reversal of the trial court's order. The main thrust of its concern is the fiscal and administrative burden that it claims will result. It notes that the state is required to operate a program to establish paternity under 42 U.S.C.A. 652(g) (West 1991) which meets the performance standards of 45 C.F.R. 303.5 (1991). DHSS contends that sec. 303.5 provides that a state must establish paternity for 75% of all non-marital children born in the state within one year of location of each non-marital child's putative father or within six months of the child's birth, whichever comes later.[2] Failure to meet these standards results in a sub-

---

[2]Though unimportant to our decision, we read 45 C.F.R. 303.5 (1991) to say that a state must establish paternity within either one year of the location of the putative father or within one year of the child reaching six months of age, whichever is later.

stantial fiscal penalty to the state. The department notes that for the year 1991, the state met its 75% burden by one case. The department contends that if mothers were joined in all paternity actions, these caseload time standards would never be met.

The department has been unable to unearth for us any empirical data showing that naming the mother as a party would result in a longer period of time for establishing paternity. At oral argument, it was suggested that if the mother cannot be immediately found, then service would be delayed or, perhaps, never accomplished. We do not agree that this provides just cause for refusing to name the mother. Section 803.03(1), Stats., specifically says that necessary parties shall be joined *if feasible.* If time is important, the state can bring a pleading under sec. 803.03(4) explaining the reason for nonjoinder. The court, in its discretion, can grant the relief.

It was also suggested that the mother may not dispute paternity, but may dispute custody, visitation or any other related issues, thus drawing out the time for establishing paternity. Again, if time is essential, the court has authority to shape relief so that prejudice can be lessened or avoided. Section 803.03(3)(a), Stats. One method of relief would be to grant judgment on the paternity issue and reserve the remaining issues for another time. In short, the possible administrative and fiscal problems can be diminished, if not wholly excised, by the remedies made available in the statute.

We conclude that the mother is a necessary party. We uphold Judge Davis' orders dismissing the two cases

---

So, it would appear that the time frame standards are greater than what the department represents.

before us after the state refused to name the mothers as parties.

*By the Court.*—Orders affirmed.